IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN COUNCIL OF THE BLIND<br>1155 15th Street, N.W. , Suite 720<br>Washington, D.C.  20005<br><br>PATRICK SHEEHAN<br>14311 Astrodome Dr.<br>Silver Spring, MD. 20906<br><br>OTIS STEPHENS<br>1141 Southgate Rd.<br>Knoxville, TN 37919<br><br>            Plaintiffs,<br><br>   v.<br><br>Paul H. O'Neill<br>Secretary of the Treasury<br>1500 Pennsylvania Avenue, NW<br>Washington, D.C. 20220<br><br>AND<br><br>Rosario Marin<br>Treasurer of the United States<br>1500 Pennsylvania Avenue, NW<br>Washington, D.C. 20220<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I.  INTRODUCTION & SUMMARY

     This litigation seeks to remedy a long-standing form of discrimination against

persons with visual disabilities.  United States banknotes are the medium of exchange in

almost every facet of daily life.  The ability to use these banknotes in a fast and easy

manner is an essential ingredient of independent living.  Most Americans are fortunate enough to take for granted the ability to recognize banknote denominations.  However, for millions of Americans with blindness or low vision, it is impossible to recognize the denomination of banknotes.  This is due to the fact that U.S. banknotes are all identical in size and color, and virtually identical in design. As a result, individuals with visual disabilities suffer needless impediments in purchasing groceries, transportation, and a multitude of other goods and services.  Further, the current banknote design puts individuals with visual disabilities at a heightened risk of fraud and deceit in connection with transactions requiring the use of banknotes.

1.      This action seeks declaratory and injunctive relief under the provisions of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  Pursuant to this provision, individuals with disabilities may not be excluded from or denied the benefits of participation in any program or activity conducted by United States government.  The issuance of banknotes is clearly an activity conducted by the United States government on behalf of all of its citizens.  However, persons with visual disabilities are largely excluded from enjoying the benefits of this activity due solely to their physical limitations.  This action seeks relief from the unnecessary exclusion of millions of Americans from a critical function of everyday life.

2.      The issue of banknote denomination by individuals with blindness or low vision was thoroughly addressed in a 1995 study by the National Academy of Sciences.  This study was commissioned by the Department of the Treasury, and may be read in its entirety at http://www.nap.edu/catalog/4828.html?se_side.

3.      The National Academy of Sciences study was prepared by a panel composed of leading experts in the field of banknote production and currency design, anti-counterfeiting methods, materials composition and chemistry, as well as low vision and blindness research. This panel recommended three straightforward solutions.  The panel concluded that each of its recommendations were capable of implementation on the basis of existing technologies and within a relatively short time frame, i.e., one to three years.

4.      The three recommended solutions proposed by the National Academy of Sciences panel were as follows: (a) the size of banknotes should vary by denomination. This approach has been adopted in over 120 countries in the world.  This recommendation could readily be implemented within existing technology for banknote production.  Additionally, existing automated teller machine technology is capable of handling different size banknotes; (b) the color of banknotes should vary by denomination. This is an established practice in over 130 countries.  Moreover, this recommendation could be implemented using the existing intaglio printing methods now in use at the Bureau of Engraving and Printing; (c) a high contrast denomination numeral should be placed on one side of the banknote, the size of which is at least 1/2 the size of banknote height.

5.      The panel concluded that the only reliable method currently available by which blind individuals may accurately denominate banknotes is through keying denomination to banknote size.  The second and third recommendations pertaining to the use of colors and larger size denomination numeral would be especially useful to persons with low vision.

6.      This litigation seeks to compel Defendants to implement the recommendations of the panel of experts which it convened through the National Academy of Sciences.  Unfortunately, Defendants have taken little action to implement the panel's 1995 recommendations.

7.      The 1996 and 1999 series banknotes contained minor modifications to the denomination numeral on the lower right hand corner of backside of the $5, $10, $20, $50, and $100 banknotes.  However, this slightly larger denomination numeral is written in green, as opposed to black ink, thereby reducing contrast levels.  Additionally, the size of this larger denomination numeral is only a fraction of the size recommended by the National Academy of Sciences panel, and is placed on only one corner of one side of the banknote.  As a result, this modification is of little utility to persons with low vision, and is of no utility to individuals with blindness.  Moreover, even this minor design change has not been incorporated into the $1 banknote.

8.      The inaction of the Defendant in implementing these recommendations is largely due to Defendant's perception that the public would be unwilling to accept any changes to the size, color, or design of banknotes.  However, as noted by the National Academy of Sciences panel, such unwillingness could readily be overcome if accompanied by a thoughtfully planned educational campaign by the Defendant. Additionally, any notion that the American public is unwilling to accept money of different sizes is negated by the fact that the size of U.S. coinage varies by denomination. Moreover, U.S. banknotes are by statute legal tender for all debts, and therefore must necessarily be accepted by all persons conducting currency transactions, regardless of personal preferences

## II.  JURISDICTION AND VENUE

9.      Jurisdiction is properly vested in this Court pursuant to 28 U.S.C.  § 1331

over causes of action arising under Section 504 of the Rehabilitation Act, 29 U.S.C. §

794.

10.     Venue lies in this district under 28 U.S.C. 1391(e).

## III.  PLAINTIFFS

11.     The American Council of the Blind is the nation's leading membership

organization of blind and visually impaired people. It was founded in 1961 and

incorporated in the District of Columbia.  The Council's membership numbers in the tens

of thousands.  ACB has 51 state and regional affiliates and 20 national special interest

and professional affiliates. The Council strives to improve the well-being of all blind and

visually impaired people by: serving as a representative national organization of blind

people; elevating the social, economic and cultural levels of blind people; improving

educational and rehabilitation facilities and opportunities; cooperating with the public and

private institutions and organizations concerned with blind services; encouraging and

assisting all blind persons to develop their abilities and conducting a public education

program to promote greater understanding of blindness and the capabilities of blind

people. ACB monthly publishes The Braille Forum, a national magazine with a

readership of approximately 26,000. The Council also produces a monthly half-hour

radio information program, ACB Reports, for radio reading information services. It also

distributes TV and radio public service announcements highlighting the capabilities of

blind people.  The ACB has many members who would benefit from making United

States banknotes accessible to persons with visual disabilities.  The American Council of

the Blind has adopted numerous resolutions over the last 25 years with the purpose of encouraging the Defendant to redesign currency so as to make denomination possible for persons with visual disabilities.

12.     Otis Stephens is a blind person residing at 1141 Southgate Rd., Knoxville, TN 37919.   Dr. Stephens is a Professor of Law at the University of Tennessee School of Law at Knoxville, Tennessee.  Dr. Stephens generally relies upon a trusted sighted individual to inform him as to the denomination of a particular banknote.  Dr. Stephens then typically distinguishes between banknotes of varying denominations by folding the banknote into a shape peculiar to that denomination. For example, $5 banknotes are folded lengthwise; $10 banknotes are folded in halves, etc. When receiving change after purchasing an item, Dr. Stephens generally relies upon the store cashier to identify the denomination of each banknote handed to him. Dr. Stephens then folds the money received as change according to the system described above.

13.     Patrick Sheehan is an individual with low vision residing at 14311 Astrodome Dr., Silver Spring, MD. 20906.  Mr. Sheehan is a computer specialist employed by the United States Department of Veterans Affairs in Washington, D.C.  Mr. Sheehan has no vision in his right eye, and left eye vision is at 20/350.  Only in the most optimal lighting conditions is Mr. Sheehan able to distinguish between banknotes of varying denominations.  Typically, Mr. Sheehan uses a closed circuit television to magnify the banknote so that he can distinguish between banknotes of different denominations.  Mr. Sheehan then folds the banknote into a unique shape peculiar to that denomination.  Banknotes received from a cashier after purchasing an item often remain

unsorted until Mr. Sheehan is in a position to examine the banknote through one of the means described above.

## IV.  **DEFENDANTS**

14.     Paul H. O'Neill is the Secretary of the Treasury ("Secretary").  The United States Department of Treasury is an executive agency of the United States government. The Department of the Treasury is organized into two major components: Departmental offices and the operating bureaus.  The Bureau of Engraving and Printing ("BEP") is one of the operating bureaus of the Department of the Treasury.  Among the BEP's functions include designing and manufacturing United States currency; designing and manufacturing many postage stamps, customs stamps and revenue stamps; designing, engraving and printing Treasury bills, notes and bonds, and other U.S. securities;  and designing, engraving, and printing commissions, permits, and certificates of awards.

15.     Rosario Marin is the Treasurer of the United States. Responsibility for oversight of the Bureau of Engraving and Printing was assigned to the Treasurer of the United States in 1981. The Treasurer reports to the Secretary of the Treasury through the Assistant Secretary (Management)/Chief Financial Officer.

16.     United States banknotes are all produced by the BEP. The BEP produces 37 million notes a day with a face value of approximately $696 million.  The BEP has printed all U.S. banknotes since October 1, 1877.

## V.  **STATEMENT OF THE CASE**

### A. Statutory Framework

17.     Section 504 of the Rehabilitation Act of 1973 ("Section 504") prohibits

discrimination against persons with disabilities in connection with any program or

activity conducted by any executive agency of the United States government.

Specifically, this section provides in pertinent part as follows:

> *No otherwise qualified individual with a disability in the United States, as defined in section 706 (20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.*

See 29 U.S.C. § 794.

18.     The term "individual with a disability" means any person who—
> *(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;*
> *(ii) has a record of such an impairment; or*
> *(iii) is regarded as having such an impairment.*

See 29 U.S.C. § 705 (2001)

19.     United States banknotes are legal tender for all debts, public and

private. 31 U.S.C. § 5103 (2001)

20.     All banknotes must contain the inscription "In God We Trust" in a place

the Secretary decides is appropriate. Further, only the portrait of a deceased individual

may appear on United States banknotes. The name of the individual must be inscribed

below the portrait.  Banknotes must further be produced from intaglio plates on plate

printing presses selected by the Secretary.  31 U.S.C. § 5114.

21.     Banknotes must bear a distinctive letter and serial number which is

assigned by the Board of Governors of the Federal Reserve System. 12 U.S.C. §  413

Banknotes may be produced in denominations of $1, $2, $5, $10, $20, $50, $100,

$500, $1,000, $5,000, $10,000, as required to fulfill the needs of the Federal Reserve

banks.  12 U.S.C. § 418.  However, U.S. banknotes are currently published in 6

different denominations, i.e., $1, $5, $10, $20, $50, and $100.

22.     Except as provided above, the form and design of United States currency

is solely within the discretion of the Secretary of the Treasury. 12 U.S.C. § 418.

B. <u>Impact of Blindness and Low Vision on Banknote Denomination</u>

23.     There are more than 3 million people in the United States with low vision.

Low vision is frequently defined as having corrected visual acuity no better than 20/60 in

the better eye, or as being unable to read regular newsprint with optimal reading glasses.

Additionally, persons with severe peripheral field loss, i.e., who have a maximum visual

field of no more than 30 degrees, are also defined as having low vision.

24.     Low vision most severely impacts elderly Americans.  Approximately 10

percent of the population within the age category of 75 to 84 is believed to have low

vision.  Another 25 percent of the population 85 and older also has low vision. However,

visual impairments are not confined solely to the elderly population.  Approximately 1

million persons below age 65 experience low vision.  An additional 9 million Americans

experience other forms of visual impairment which may interfere with activities of daily

living.

25.     There are approximately 200,000 of people in the United States who are

blind, i.e., have no useful pattern vision.

26.     Blindness constitutes a physical impairment which substantially limits one

or more of such individual's major life activities. As such, persons with blindness are

"individuals with a disability" for purposes of 29 U.S.C. § 705.

27.     Low vision constitutes a physical impairment which substantially limits one or more of such individual's major life activities. As such, persons with low vision are "individuals with a disability" for purposes of 29 U.S.C. § 705.

28.     The ability to identify banknotes denominations in a private and independent manner constitutes an essential ingredient of everyday life.  Individuals who are unable to identify banknote denominations are precluded from participating in a variety of transactions which are integral to daily life, such as the ability to freely make purchases.  Such individuals are unable to independently ascertain whether they have provided the appropriate banknote denominations when purchasing goods and whether they have received as change the appropriate banknotes.  Further, individuals with visual disabilities experience increased vulnerability to fraudulent transactions as a result of the design of banknotes.

29.     Unlike U.S. coinage, the denomination of which differs by size, all U.S. currency has been the same size since 1929, i.e. 2.61 inches wide by 6.14 inches long by .0043 inches thickness.  However, in over 120 countries, the size of the banknote varies with its denomination.

30.     All banknote denominations are printed with identical ink on the same security paper.

31.     People who are blind are unable to identify various banknote denominations due to the fact that all U.S. banknotes, regardless of denomination, are identical in size and texture.

32.     Individuals with low vision experience difficulty in rapidly identifying banknote denomination, particularly under adverse lighting conditions. For example, a

person with low vision may be able to identify currency denomination under excellent

lighting conditions; however, such an individual may be unable to do so in a taxi at

nighttime. This difficulty reduces the ability of many such persons to engage in

successful banknote transactions, which require rapid identification of denomination

without the need for drawn-out examination or deliberation.

33.     Portable electronic devices exist which may assist individuals in

denominating banknotes.  However, these machines are usually expensive, approximately

$300.  Moreover, the condition of the banknote may adversely impact upon the reliability

of these machines.  Finally, these machines are relatively slow, and thus constitute an

additional encumbrance in attempting to denominate banknotes in a fast and easy

manner.

C.  The National Academy of Sciences Recommends a Major Banknote Redesign

34.     The National Academy of Sciences is a private, nonprofit society of

distinguished scholars, chartered by Congress in 1863 to advise the federal government

on scientific and technical matters.

35.     In 1995, the National Academy of Sciences published a report entitled

"Currency Features for Visually Impaired People."  This report was prepared under

contract with the United States Treasury Department, Bureau of Engraving and Printing.

The objectives of the National Academy of Sciences study, as requested by the BEP,

were to:  (a) assess features which can be utilized by visually disabled individuals in

recognizing and denominating banknotes; (b) recommend features which may be

reasonably incorporated into banknotes using existing technology; (c) suggest

implementation strategies to make the recommended features more effective; and (d) identify promising future research areas.

36.     The study recommended several near term actions to be taken by the BEP in redesigning banknotes so as to make them more accessible to persons with visual disabilities.  These near term actions involve the incorporation of features into banknotes which are based on existing technologies and which are commonly in use today in other countries.  The 1995 study concluded that the following features should be incorporated into U.S. banknotes within a 1 to 3 year timeframe:

37.     First, both the length and height of banknotes should be varied so as to allow persons with visual disabilities to make reliable judgments concerning denomination. The panel noted that the technology required to produce banknotes of differing size is widely available, and in fact is in use in over 120 countries. The study concluded that this is the only solution which is presently available based on existing technologies which will fully satisfy the needs of blind persons.  The panel noted that any additional costs in capital investment to make this change would likely be offset by the savings in material cost which could be achieved by making the most frequently printed banknotes the smallest in size.  The study further noted that this change may be made within the framework of existing technology for automated teller machines ("ATM's"), based upon the widespread use of ATM machines in other countries capable of handling a variety of national currencies. The panel further held that, with sufficient preparation, the public will come to readily accept this change as demonstrated by the fact that it accepts coinage of different sizes.   The panel further recommended public education as to the benefits of and reasons for this design change.

38.     Second, the study concluded that a single color should dominate at least one face of the banknote, and such color should be distinguishable from other colors in the banknote sequence so as to make the note identifiable under poor lighting conditions. The panel noted that the technology to implement this feature would not require major changes to existing banknote production methods, and would be inexpensive to implement.

39.     Third, the study recommended that banknotes be redesigned so as to contain at least a single high contrast denomination numeral, in a plain font, which is larger than one-half the size of the current banknote height.

D.   The Department of Treasury Fails to Take Meaningful Corrective Action

40.     The Defendants have failed to implement any of the recommendations of the panel convened by the National Academy of Sciences.  Nor have the Defendants taken any other meaningful action to facilitate denomination for individuals with blindness or low vision.

41.     The $5 and $10 banknotes were redesigned in 1999. In 1996, $20, $50, and $100 banknotes were redesigned.  Current and prior designs of these notes may be seen on the BEP web site at http://www.bep.treas.gov.

42.     The redesigned $5, $10, $20, $50, and $100 notes incorporate what is referred to as a low vision feature consisting of a larger denomination numeral on the lower right hand corner on the back of the note.

43.     The larger denomination numeral on the $5, $10, $20, $50, and $100 notes are printed with green, not black ink, thereby reducing contrast levels. Further, the larger denomination numeral is significantly smaller in size than recommended by the National

Academy of Sciences panel. The National Academy of Sciences panel recommended that the larger denomination numeral should be at least 1/2 the size of banknote height.

44.     The 1996 and 1999 redesigns did not implement any of the panel's recommendations with respect to using color and size as a key to denomination.

E.  Special Statutory Requirements with Respect to the Design of the $1 Banknote

45.     The Department of Treasury and General Government Appropriations Act for Fiscal Year 2002 prohibits the use of any funds for the purpose of redesigning the $1 banknote. See Public Law 107-67, Nov. 12, 2001, § 117.  Similar language appeared in the Department of Treasury and General Government Appropriations Act for FY 2000, Public Law 106-58,  Sept. 29, 1999, § 117.  However, the Conference Report on H.R. 4104, Treasury and General Government Appropriations Act, 1999, makes explicit the Congressional intent with respect to the $1 banknote.  The Conference Report states as follows:

> The conferees remain concerned about the cost associated with producing special anti-counterfeiting properties for the estimated 6 billion circulating $1 Federal Reserve Notes. As a result, the conferees do not believe the Bureau of Engraving and Printing should undertake cost prohibitive anti-counterfeiting changes to the $1 note. However, the conferees do believe it is important to update the currency, such as making minor modifications to assist the visually impaired.
> Therefore, the conferees direct the Department of the Treasury and the Bureau of Engraving and Printing not to pursue redesign of the $1 Federal Reserve Note to combat international counterfeiting threats, but to only make minor design enhancements to the $1 note for the visually impaired and elderly population, provided it has no effect on the use of $1 Federal Reserve Notes with existing bill accepting machinery.

See Conference Report on H.R. 4104, Treasury and General Government Appropriations Act, 1999, 144 Cong. Rec, H 9870, October 7, 1998.

46.     Contrary to the intent of the Congress, the Defendant has failed to incorporate even minor changes to the $1 banknote, including the addition of the larger denomination numeral.

## COUNT I

## DEFENDANT'S VIOLATION OF THE REHABILITATION ACT

47.     Plaintiffs incorporate each allegation of paragraphs 1 through 46 as fully set forth herein.

48.     The Rehabilitation Act requires that U.S. banknotes be designed in such a manner so that their denominations are readily identifiable by persons with blindness or low vision.

49.     Defendants have acted contrary to the legal requirements of the Rehabilitation Act by designing and manufacturing banknotes which are identical in size, thereby precluding individuals with blindness or low vision from being able to identify such banknotes.

50.     Defendants have acted contrary to the legal requirements of the Rehabilitation Act by designing and manufacturing banknotes which are identical in color, thereby precluding individuals with low vision from being able to identify such banknotes.

51.     Defendants have acted contrary to the legal requirements of the Rehabilitation Act by designing and manufacturing banknotes which are identical in

texture, thereby preventing individuals with blindness or low vision from being able to identify such banknotes.

52.     Defendants have acted contrary to the legal requirements of the Rehabilitation Act by designing and manufacturing banknotes which are identical in color, thereby precluding individuals with low vision from being able to identify such banknotes.

53.     Defendants have acted contrary to the legal requirements of the Rehabilitation Act by designing and manufacturing banknotes which fail to include a single high contrast large denomination numeral of sufficient size so as to permit an individual with low vision to be able to readily identify such banknotes.

54.     Plaintiffs will suffer irreparable harm if Defendants are not restrained from breaching their duty under the Rehabilitation Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court further grant the following relief:

(a)     issue a declaratory judgment that the Defendants have an obligation under the Rehabilitation Act to design banknotes in such a manner so that they may be readily identified by individuals with blindness or low vision.

(b)     issue a permanent injunction prohibiting Defendants from continuing to manufacture banknotes in the present manner, the effect of which is to preclude millions of Americans from participating in the essential functions of everyday life.

(c)     issue a permanent injunction requiring that banknotes be designed to incorporate features which would make them accessible to people with

visual disabilities, including but not limited to:

(1)     a low vision feature involving a single denomination numeral which is at least one half the size of banknote height, and is printed with black ink on a white surface so as to increase contrast levels;

(2)     denomination numerals indicated by Braille symbols and raised printing on the banknote itself.

(3)     varying the length, height, and color of banknotes by denomination.

(d)     issue a permanent injunction mandating that the $1 banknote be redesigned to incorporate new low vision features as mandated by Congress.

(e)     award expenses, costs, and reasonable attorney fees to Plaintiffs

(f)     issue such further relief as this Court deems just and appropriate.


Dated: May 2, 2002

                              Respectfully submitted,


                              _____
                              Jeffrey A. Lovitky
                              Attorney at Law
                              D.C. Bar Number 404834
                              1735 New York Avenue, N.W.
                              Suite 700
                              Washington D.C. 20006
                              (202) 429-3393

                              ATTORNEY FOR PLAINTIFF